IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN D. BEEM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 10-3012-CM |
| STATE OF KANSAS, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Steven D. Beem, a prisoner at the Lansing Correctional Facility, brings this action pursuant to the Americans with Disabilities Act ("ADA").[1] Plaintiff claims that defendants—the State of Kansas, the Director of Division of Personnel Services in the Kansas Department of Administration, and seven officials/employees of the Kansas Department of Corrections—violated his First, Eighth, and Fourteenth Amendment rights, thereby depriving defendants of Eleventh Amendment immunity and giving plaintiff actionable ADA claims. Specifically, plaintiff contends that defendants knew of numerous ADA violations at Lansing yet failed to correct them. Plaintiff also contends that some of the defendants retaliated against him for asserting his rights under the ADA. Defendants filed a Motion for Summary Judgment (Doc. 60), in which they make the following arguments: (1) plaintiff is

---

[1] Although plaintiff originally brought claims pursuant to 42 U.S.C. § 1983, those claims are not present in the controlling pretrial order. The pretrial order identifies only claims for violations of the ADA. A Rule 16(e) pretrial order supersedes the pleadings and defines the scope of the action. *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991). And even if the court believed that plaintiff had properly preserved his § 1983 claims, the court would grant summary judgment on those claims for substantially the same reasons contained in this Memorandum and Order. Under § 1983, punitive damages are not available against governmental authorities or individuals sued in their official capacities. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Without the claim for punitive damages, plaintiff is left only with his claims for compensatory damages, but he fails to show physical injury as required by 42 U.S.C. § 1997e(e).

-1-

not entitled to punitive damages as a matter of law; (2) defendants have not violated the ADA and are entitled to sovereign immunity; and (3) plaintiff's retaliation claims fail.

Because the only claims remaining against the individual defendants are brought against them in their official capacity, the claims are actually claims against the State of Kansas. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.") (internal citation omitted).  The court therefore considers all claims remaining in the case as claims against the State of Kansas.

## I.     Factual Background

Plaintiff is an inmate at Lansing Correctional Facility East Unit (LCF-EU), which is the minimum security area of Lansing.  LCF-EU was originally a women's prison, established in 1917. Plaintiff claims he is non-ambulatory and relies on a wheelchair for all travel.  He claims that he injured his right shoulder on May 29, 2009.  At the time, he was attempting to transfer from his wheelchair to the toilet in Pod 3 of the X Unit.  Although plaintiff did not seek immediate treatment, medical providers examined his shoulder in late June or July 2009, and began giving him physical therapy on September 17, 2009.

On September 18, 2009, officials removed a broken shower seat in Pod 3 of the X Unit for repair or replacement.  They replaced it with a temporary seat that was only 14.5 inches high instead of the 17 to 19 inches required by 28 C.F.R. p. 36, app. A, § 4.21.3.  Eventually, officials replaced the temporary shower seat with a permanent one on October 19, 2009.  Plaintiff refused to take a shower while the temporary seat was in place.

On October 1, 2009, plaintiff submitted a grievance regarding alleged ADA violations. Plaintiff claims that Andrew Parks, Unit Team Manager, refused to process his grievance. On October 5, plaintiff filed his ADA complaint through Unit Team Counselor Ryan Reece.

Plaintiff claims that on October 9, 2009, prison administration retaliated against him by denying him the opportunity to obtain a new Kansas state identification and returning his Department of Motor Vehicles check. Although Corrections Counselor Cecil Lawrence requested clearance for plaintiff to renew his state identification card, he canceled the trip and returned plaintiff's check when he learned that plaintiff was wheelchair-bound. At the time, defendant Lawrence did not know that plaintiff had filed a grievance or complaint. Plaintiff filed a grievance against defendant Lawrence on October 29, 2009.

Then, on November 1, 2009, Lieutenant Beeson attempted to confiscate plaintiff's wheelchair gloves. According to plaintiff, Lieutenant Beeson told him that the CM-II East Unit Administrator, Bill Shipman, had ordered him to confiscate the gloves. Plaintiff claims that this action was retaliatory, as well. Plaintiff confirmed that he had a medical excuse and was then allowed to keep his gloves.

Plaintiff alleges the following technical violations of the ADA:

| Alleged Violation | Plaintiff's Position on Requirements | Defendants' Position on Requirements | Alleged Injury |
|---|---|---|---|
| Toilet in Pod 3 of X Unit | 28 C.F.R. pt. 36, app. A, § 4.17.3 requires that a restroom stall have a width of 60 inches, but the stall is only 39 inches wide. | The exception for existing buildings allows acceptable alternate stalls measuring 36 inches by 69 inches. | Plaintiff injured his shoulder on May 29, 2009. |
| Temporary Shower Seat in Pod 3 of X Unit | The temporary replacement seat was only 14.5 inches in height and violated 28 C.F.R. pt. 36, app. A, § 4.21.3, Fig. 36 and 28 C.F.R. § 35.133. | Gene Myracle, retired Chief of Maintenance, does not believe that the temporary shower seat complied with ADA standards. | Plaintiff did not take a shower for one month. |
| Water Closet, Grab Bars, and Lavatory inside Phillips Hall | The Phillips Hall toilet area was not in compliance with 28 C.F.R. pt. 36, app. A, §§ 4.16.3 and 4.16.4 until October 26, 2010. | There were problems with the grab bar height and length, the height of the toilet, and the cover below the wash basin. Those have been corrected and the toilet area is now in compliance. | Plaintiff has to cut visitations short. |
| No Accessible Toilet in the Administration Building, which Houses Religious Services | 28 C.F.R. § 35.150 requires that a public entity make services, programs, or activities "readily accessible to and usable by individuals with disabilities." The LCF Max and Medium Units—under the same Warden but different administrators—both have toilet facilities in buildings where religious services are located. | Toilet facilities are not available to any inmate in the East Unit Administrative Building. | Plaintiff cannot attend religious services. |
| No Accessible Toilet in the Administration Building, which Houses the Medical Clinic | 28 C.F.R. § 35.150 requires that a public entity make services "readily accessible to and usable by individuals with disabilities." | Toilet facilities are not available to any inmate in the East Unit Administrative Building. | Plaintiff has no toilet available while attending medical appointments. |
| Lack of Visual Fire Alarms in the Sleeping Areas of Pod 3 of X Unit | 28 C.F.R. pt. 36, app. A, §§ 4.28.3 and 4.28.4 require that sleeping accommodations have a visual alarm. | NFPA 72 allows correctional facilities to have private alarm systems rather than public alarm systems. In addition, the building has not been remodeled, so it is compliant. | None. |

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences there from in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A. *Punitive Damages*

The first inquiry does not require much discussion. As a matter of law, Title II of the ADA does not permit punitive damages awards. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Edmisten v. Kansas*, No. 08-3091-SAC, 2008 WL 4540460, at *5 (D. Kan. Oct. 9, 2008) (citing *Barnes*, 536 U.S. at 189). The court grants summary judgment on plaintiff's claim for punitive damages.

### B. *Violations of the ADA/Sovereign Immunity*

The Supreme Court has stated that if a public entity's disability-based discrimination violates the Constitution, the entity is not entitled to sovereign immunity and may be held responsible for ADA violations. *United States v. Georgia*, 546 U.S. 151, 159 (2006). In addition, Title II of the ADA also abrogates sovereign immunity for "at least some classes of conduct that do not facially violate the Constitution but are prohibited to 'prevent and deter unconstitutional conduct.'" *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006) (citing *Tennessee v. Lane*, 541 U.S. 509, 518 (2004); *Georgia*, 546 U.S. 151). In resolving the sovereign immunity question, the court is to consider:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.  Under this test, the court must first determine whether the public entity violated the ADA.  *Guttman*, 446 F.3d at 1036; *see also Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007) (addressing the Title II question first); *Buchanan v. Maine*, 469 F.3d 158, 172–73 (1st Cir. 2006) (expressly holding that courts must address the ADA question first); *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (declining to decide whether *Georgia* requires courts to decide the merits of a Title II claim before deciding the constitutional issue).

The ADA prohibits a public entity from discriminating against qualified individuals with disabilities in the administration of its services, programs, or activities.  42 U.S.C. § 12132.  The regulations implementing the ADA provide, "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.150(a).  But the regulations further provide that this mandate does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities."  *Id.* § 35.150(a)(1).

**1.  Toilet in Pod 3 of X Unit**

The toilet in Pod 3 meets the standard for "alternate stalls" in C.F.R. pt. 36, app. A, § 4.17.  While it is not an ideal configuration, it is acceptable for an existing building.  The evidence indicates that LFC-EU has not remodeled or altered the building.  (Doc. 60-2 at 4.)  This ends the inquiry of whether the toilet presents an ADA violation, and the court's examination of this issue could end here.  Defendants are entitled to sovereign immunity based on the lack of an ADA violation.  For additional reasons, however, this ADA claim is not compensable.

Compensatory damages for this claim are barred on an independent basis:  plaintiff has offered only an unsupported allegation of physical injury resulting from this claim.  Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), a prisoner may not bring a claim for mental or emotional

injury without a prior showing of physical injury. This limitation applies to ADA claims. *Cassidy v. Ind. Dep't of Corrs.*, 199 F.3d 374, 376 (7th Cir. 2000). It also is claim-specific; merely bringing a case with one physical injury does not relieve all other claims from the physical injury requirement. *Green v. Denning*, No. 06-3298-SAC, 2010 WL 781723, at *3 (D. Kan. Mar. 5, 2010).

Plaintiff states in his affidavit that he injured his right shoulder on May 29, 2009 while attempting to transfer from his wheelchair to the toilet. Plaintiff did not seek medical attention at that time. On June 21, 2009, he claims that he reinjured his shoulder in the shower. Plaintiff's medical records, however, do not mention the May 29 incident. Plaintiff sought medical treatment on July 23, 2009. In the "history" section of the medical record, the evaluator states that plaintiff hurt his right upper arm while showering on June 21, 2009. (Doc. 61-1 at 44.) There is no mention of a May 29 incident. Plaintiff began physical therapy on his shoulder on September 18, 2009. The progress note for that date states that plaintiff "[v]oices gradual onset of right shoulder pain without specific injury." (*Id.* at 46.)

Plaintiff's affidavit, attempting to show that he was injured by the allegedly non-compliant toilet, cannot now create a genuine issue of material fact about the onset of his injury. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."). In any event, even if plaintiff did injure his shoulder to some degree on May 29, that injury would qualify as *de minimis*. Plaintiff does not describe his injuries. He simply states, "On May 29, 2009 I fell and injured my right shoulder while attempting to transfer from my wheelchair over onto the toilet located in 3-Pod of X-Unit. Thinking the shoulder might heal on its own, I did not seek immediate medical attention." (Doc. 61-1 at 83.) The lack of detail about his injury—combined with plaintiff's failure to report any injury

at all until July 23 (and at that time reporting a different triggering event)—leaves the court to speculate about the extent of any injury incurred on May 29.  There is no factual basis for the court to conclude that plaintiff may have had an injury that was "less-than-significant-but-more-than-*de minimis*."  *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003) (surveying the Circuits' analyses of what constitutes adequate physical injury).

The court notes that plaintiff's affidavit also mentions that he fell while attempting to transfer from his wheelchair to the toilet on February 20, 2010.  He claims that he injured his left shoulder at that time.  But this injury is not mentioned in the pretrial order.  In fact, it occurred after the complaint in this case was filed on January15, 2010.  The court therefore does not consider this injury when evaluating plaintiff's claim.

### 2.  All other alleged violations

Plaintiff seeks emotional and physical compensatory damages for his claims.  (*See* Doc. 58, at 20–21.)  Although he also seeks punitive damages, the court has granted summary judgment on his punitive damages request.  Plaintiff has not requested any non-monetary relief.

The problem with the remainder of plaintiff's ADA complaints is that he has alleged no physical injury associated with them.  He alleges only that he was prevented from taking certain actions.  As indicated above, physical injury is a necessary predicate for compensatory damages in prison litigation.  42 U.S.C. § 1997e(e); *Cassidy*, 199 F.3d at 376; *Green*, 2010 WL 781723, at *3.  Because plaintiff has alleged no physical injury stemming from any of his other alleged ADA violations, and because he only seeks compensatory damages for the violations, the court grants summary judgment on these claims.

### C.  *Retaliation*

The ADA prohibits "discrimination against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge" under the ADA. 42 U.S.C. § 12203(a). Neither can an entity interfere with a person's exercise of a right protected by the ADA. *Id.* § 12203(b). To prevail on an ADA retaliation claim, a plaintiff must show that (1) he voiced opposition to an act made unlawful by the ADA; (2) he suffered injury or harm; and (3) a causal connection existed between the protected act and the retaliation. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1266 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)).

The uncontroverted facts relating to plaintiff's retaliation claims demonstrate that the purported causal connection between plaintiff's complaints and defendants' actions is based on nothing more than unsupported speculation.

Plaintiff attempted to file a grievance on October 1, 2009, and filed an ADA complaint on October 5, 2001. Although Cecil Lawrence cancelled plaintiff's scheduled trip to renew his license on October 9 and returned plaintiff's check, the uncontroverted evidence shows that Corrections Counselor Lawrence was not aware that plaintiff had filed a grievance or complaint at the time he cancelled the trip. According to Lawrence, he cancelled the trip upon learning that plaintiff was wheelchair-bound because he had not reserved the correct vehicle to transport plaintiff and he was not trained in transporting wheelchair-bound inmates. Plaintiff's attempt to controvert Lawrence's representation is ineffective. Plaintiff states, "He [Lawrence] knew who I was prior to my scheduled trip to the DMV and had known all along that I was wheelchair bound." (Doc. 61-1 at 87.) This unsupported statement is insufficient to create a genuine issue as to whether Lawrence knew that plaintiff had filed a grievance before he cancelled plaintiff's trip.

Likewise, plaintiff fails to show a causal connection between his October 5 or October 29 grievance and the glove-confiscation incident. It is true that plaintiff filed a grievance only three days before Lieutenant Beeson approached him about his gloves. Plaintiff claims that Lieutenant Beeson told him he was doing so at the order of Bill Shipman. But the October 29 grievance was against neither Lieutenant Beeson nor Bill Shipman. Further, there is no evidence that either one of them was aware of the grievance when Lieutenant Beeson approached plaintiff about the gloves. Again, plaintiff fails to show a causal connection between the events.

It also appears from the record that plaintiff suffered no harm from either event. A memo from David McKune indicates that plaintiff obtained his state-issued identification on November 24, 2009. (Doc. 61-1 at 125.) And plaintiff's gloves were never actually confiscated. Plaintiff only had to show his medical authorization, and Lieutenant Beeson allowed him to keep them. Without a showing of harm, plaintiff cannot prevail.

Finally, plaintiff's ADA retaliation claims for compensatory damages are independently barred by the lack of physical injury, as further explained above. 42 U.S.C. § 1997e(e); *Cassidy*, 199 F.3d at 376; *Green*, 2010 WL 781723, at *3. The court grants summary judgment on plaintiff's retaliation claims.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 60) is granted.

The case is closed.

Dated this 30th day of April, 2012, at Kansas City, Kansas.

                 s/ Carlos Murguia
                 **CARLOS MURGUIA**
                 **United States District Judge**